```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**KING COAL CHEVROLET CO.,**

    **Plaintiff,**

v.                                                  Civil Action No. 2:12-5992

**GENERAL MOTORS LLC,**

    **Defendant.**


<u>MEMORANDUM OPINION AND ORDER</u>

Pending are the motion of the plaintiff King Coal Chevrolet Co. for a preliminary injunction, filed October 10, 2012, and the motion to dismiss of the defendant General Motors, LLC, filed October 16, 2012.


                                       I.


This case involves a dispute between an automobile manufacturer and one of its dealers. The Legislature, in what the court will refer to as the Dealer's Act, has observed that "the distribution and sale of motor vehicles in this State vitally affects the general economy and the public welfare . . . ." W. Va. Code § 17A-6A-1. In regulating this vital area of commerce, the Legislature focused the Dealer's Act, in part, on

mitigating "undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor . . . ." Id.

Such control occurs when a manufacturer proliferates dealerships in a confined geographic area, which impairs the dealers' efforts to sustain a profitable enterprise. The Dealer's Act thus requires a manufacturer to notice its preexisting dealer in a given area before establishing or relocating a competitor of the same line-make within the preexisting dealer's relevant market area. Once the notice is received, the preexisting dealer is authorized to institute a statutory declaratory judgment action to determine whether good cause exists for the establishment or relocation of the competitor.

The correct interpretation of the Dealer's Act facilitates not only the resolution of this action but is also central to implementing the Legislature's policy choices. The discussion that follows tracks essentially the allegations of the complaint unless otherwise indicated.[1]

---

[1] The record includes the November 20, 2012, stipulations of fact and the transcribed evidentiary hearing held December 12, 2012.

II.

Plaintiff King Coal Chevrolet Co. ("King Coal") is located in Oak Hill. It sells Chevrolet vehicles manufactured by defendant General Motors LLC ("GM"). As a result of a Chapter 11 reorganization proceeding instituted by its predecessor, General Motors Corporation, GM set about trimming its dealer network. As a part of that effort, GM discontinued a Chevrolet franchise agreement with Lewis Automotive Group ("Lewis Automotive") which, like King Coal, sold that line-make in the Beckley area.

In November 2010, GM appears to have concluded that its restructuring efforts would be enhanced by another dealership in the Beckley area. It identified potential candidates and encouraged them to submit proposals to aid GM in ascertaining the best prospect. Lewis Automotive was not one of the candidates. GM ultimately chose the principals of the proposed Mid-State Chevrolet ("Mid-State") to open the Beckley-area GM dealership. The dealership, popularly known as Crossroads Chevrolet ("Crossroads"), is now open for business. It is undisputed that Crossroads was established within two years of the closure of Lewis Automotive's Chevrolet dealership.

King Coal asserts that Crossroads will directly compete with it in the existing "relevant market area" as that term is defined by West Virginia Code § 17A-6A-3(14) (defining the phrase as "the area located within a twenty air-mile radius around an existing same line-make new motor vehicle dealership[.]"). Crossroads is located 10.23 air miles away from King Coal's dealership.

GM has not provided King Coal with the statutory notice specified by the Dealer's Act. That notice is a condition precedent for a dealership seeking to avail itself of the protective declaratory judgment action contemplated by the Dealer's Act. See Raines Imports, Inc. v. American Honda Motor Co., 223 W. Va. 303, 311, 674 S.E.2d 9, 17 (2009)("Absent such statutory notice, Lester Raines Honda did not have standing to bring a statutory declaratory judgment action pursuant to W. Va. Code § 17A-6A-12(3)").

On September 10, 2012, King Coal demanded GM provide it with the statutory notice. On September 14, 2012, GM responded to King Coal and asserted that it was exempt under section 17A-6A-12(4) of the Dealer's Act from providing such notice inasmuch as it deemed Crossroads to constitute an excepted "re-opening" new motor vehicle dealership that had been closed within the preceding two years, namely, Lewis Automotive.

4

The Crossroads location is within four miles of Lewis Automotive, as required to qualify for the exemption. (Jt. Stip. ¶ 9).

Crossroads's principals are different from those of Lewis Automotive and have no association with them. Crossroads is located at a different site, has a new dealership name, a new logo, and new management. Lewis Automotive continues to do business as a Nissan dealership. King Coal objects that these facts, and others, illustrate that Crossroads is not a "reopening" of Lewis Automotive's discontinued Chevrolet dealership and is thus subject to the notice requirements found in the Dealer's Act.

King Coal seeks an order, <u>inter</u> <u>alia</u>, (1) enjoining GM from permitting the operation of any Chevrolet dealership within the relevant market area of King Coal Chevrolet, and (2) compelling GM to provide King Coal the statutory notice prescribed by the Dealer's Act.

### III. Motion to Dismiss

A.  Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

6

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

B.   Governing Substantive Law

The Dealer's Act is comprised of West Virginia Code sections 17A-6A-1 to 17A-6A-18. The legislative findings state as follows:

> The legislature finds and declares that the distribution and sale of motor vehicles in this State vitally affects the general economy and the public welfare and that in order to promote the public welfare and in the exercise of its police power, it is necessary to regulate motor vehicle dealers, manufacturers, distributors, and representatives of vehicle manufacturers and distributors doing business in this State in order to avoid undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor and to ensure that dealers fulfill their obligations under their franchises and provide adequate and sufficient service to consumers generally.

7

West Virginia Code § 17A-6A-1.  The Dealer's Act also contains a number of definitions, three of which are relevant here.  First, a "new motor vehicle dealer" is defined as follows:

> [A] person who holds a dealer agreement granted by a manufacturer or distributor for the sale of its motor vehicles, who is engaged in the business of purchasing, selling, leasing, exchanging or dealing in new motor vehicles, service of said vehicles, warranty work and sale of parts who has an established place of business in this state and is licensed by the Division of Motor Vehicles.

W. Va. Code § 17A-6A-3(11).  Second, as earlier noted, the term "relevant market area" is defined as follows:

> [T]he area located within a twenty air-mile radius around an existing same line-make new motor vehicle dealership . . . .

W. Va. Code § 17A-6A-3(14).  Third is the following provision respecting the relocation of existing new motor vehicle dealers:

> As used in this section, "relocate" and "relocation" do not include the relocation of a new motor vehicle dealer within four miles of its established place of business or an existing new motor vehicle dealer sells or transfers the dealership to a new owner and the successor new motor vehicle dealership owner relocates to a location within four miles of the seller's last open new motor vehicle dealership location. The relocation of a new motor vehicle dealer to a site within the area of sales responsibility assigned to that dealer by the manufacturing branch or distributor may not be within six air miles of another dealer of the same line-make.

W. Va. Code § 17A-6A-12(1).

There are two additional statutory provisions that are more central to the resolution of this controversy.  First, as

8

noted <u>supra</u>, section 17A-6A-12(2) requires the manufacturer to send notice to an existing new motor vehicle dealer when another dealership in the same vehicle line is poised to open in close proximity. The statute provides as follows:

> Before a manufacturer . . . enters into a dealer agreement <u>establishing or relocating</u> a new motor vehicle dealer within a relevant market area where the same line-make is represented, the manufacturer . . . shall give written notice to each new motor vehicle dealer of the same line-make in the relevant market area of its intention to establish an additional dealer or to relocate an existing dealer within that relevant market area.

W. Va. Code § 17A-6A-12(2) (emphasis added).

Second, is the statutory safe harbor for manufacturers, relied upon by GM here, that obviates the need to provide notice under section 17A-6A-12(2). The safe harbor is found in section 17A-6A-12(4), which provides as follows:

> This section does not apply to <u>the reopening</u> in a relevant market area <u>of a new motor vehicle dealer that has been closed</u> or sold within the preceding two years if the established place of business of the new motor vehicle dealer is within four miles of the established place of business of the closed or sold new motor vehicle dealer.

W. Va. Code § 17A-6A-12(4) (emphasis added).

In sum, as noted, King Coal asserts that Crossroads' is an entirely new motor vehicle dealership solicited and created after the demise of Lewis Automotive and that its recent entry into the relevant market area constitutes the

9

"establish[ment]" of a new motor vehicle dealer that requires GM to provide notice under section 17A-6A-12(2). GM responds that the circumstances surrounding Crossroads' market entry, and Lewis Automotive's departure therefrom, are more appropriately characterized as a "reopening" under the safe harbor, to which the section 17A-6A-12(2) notice provision does not apply.

GM asserts a number of arguments it claims to support its reading of the Dealer's Act. First, GM asserts that Lewis Automotive was "closed" within the temporal and geographic safe harbor found in section 17A-6A-12(4). According to GM, Crossroads' entry into the Beckley-area market is simply a reentry, or "reopening," of a Chevrolet market participant that was previously on the scene for some years. GM implicitly suggests that the term "closed" and "reopen[ed]" need not refer to the same dealer entity, meaning the focus is on market presence as opposed to a particular dealership's identity.

That assertion begs the ultimate question, namely, does the term reopening bear the same meaning as "replacement," "successor," or similar terms that would permit a new dealer under the safe harbor to enter the market in the void left by a predecessor without giving notice to a nearby competitor. GM appears to recognize that its position requires some play in the statutory joints. (See, e.g., (Def.'s Memo. in Supp. at 9

10

("Crossroads is <u>reopening to replace</u> the Lewis dealership") (emphasis added)).

That is especially so inasmuch as the Dealer's Act mentions in section 17A-6A-7(f) the phrase "replacement dealer" in the course of discussing the termination, cancellation, nonrenewal or discontinuance of any dealer agreement. GM asserts the provision actually supports its reading of the Dealer's Act inasmuch as it represents the Legislature's view that a closed new motor vehicle dealership like Lewis Automotive can be substituted by a "replacement dealer" like Crossroads.

GM next relies upon section 17A-6A-12(1) of the Dealer's Act addressing relocations of new automobile dealers. GM asserts that the subdivision "addresse[s] the notice rules when there is an association between a closed dealer and its buyer or transferee." (Memo. in Supp. at 8). GM adds that "King Coal's argument that an association is somehow required for section 17A-6A-12(4)'s exemption flies in the face of section 17A-6A-12(1), which already addresses that precise situation." <u>Id.</u>

GM's assertion, however, raises a question that it fails to answer. One could posit that use of the term "relocate" and "relocation" in section 17A-6A-12(1), just three statutory subdivisions prior to the safe harbor, illustrates

11

that the Legislature strictly confined the term "reopening" without the breadth that GM urges that it contains.  In other words, the counter argument to GM's position would be that the Legislature covered the matter of a dealership that moves or changes ownership in a very circumscribed manner in section 17A-6A-12(1), even though the marketplace would be expected to change very little by the relocation of an existing dealer within the relevant market area.[2]

An authoritative determination respecting the extant question in this case will aid motor vehicle manufacturers and dealers in ordering and adjusting their business affairs in an industry setting where robust, but fair, competition is essential.  It is noted that our court of appeals has more frequently resorted to the certification of extant legal questions in recent years.  See, e.g., Gardner v. Ally Financial Inc., Nos. 11-1708, -1731 (4th Cir. Jul. 18, 2012) (certifying a question to the Court of Appeals of Maryland); Bragg v. United

---

[2] GM offers additional contentions as well.  First, it asserts that King Coal's challenge is barred by the Participation Agreement that it entered into with GM.  The Participation Agreement apparently permits GM to relocate or establish Chevrolet dealers more than six miles from King Coal.  The court notes that the Dealer's Act provides, "Any provisions in the agreements and contracts [between a new motor vehicle dealer and a manufacturer] which violate the terms of this section are null and void."  W. Va. Code, § 17A-6A-18.  Pending an authoritative determination respecting the appropriate reach of section 17A-6A-12(3) and (4), the court does not have occasion to reach the assertion.

States, No. 11-1342 (4th Cir. Jul. 17, 2012)(certifying a question to the Supreme Court of Appeals of West Virginia); First American Title Insurance Co. v. Western Surety Co., No. No. 10–1802 (4th Cir. Aug. 2, 2011) (certifying three questions to the Supreme Court of Virginia).  Certification is likewise appropriate here.

The question certified is as follows: Do the circumstances in this case permit GM to avail itself of the safe harbor found in West Virginia Code section 17A-6A-12(4) or, instead, is it required to provide to King Coal the statutory notice commanded by section 17A-6A-12(2).

The court acknowledges that the Supreme Court of Appeals may reformulate the question.  Additionally, in the event that its answer produces a continuing controversy respecting the special legislation challenge lodged by GM under the West Virginia Constitution, that question too might be addressed authoritatively at the same time.

The names and addresses of counsel of record are as follows:

FOR KING COAL:

Christopher J. Sears
SHUMAN MCCUSKEY & SLICER
P. O. Box 3953
Charleston, WV 25339

FOR GM:

John C. Palmer, IV
ROBINSON & McELWEE
P. O. Box 1791
Charleston, WV 25326-1791

Jeffrey J. Jones
J. Todd Kennard
Allison E. Haedt
JONES DAY
P. O. Box 165017
Columbus, OH 43216-5017

As further required by West Virginia Code section 51-1A-6, the certification contains *supra* the minimal factual development appropriate at this Rule 12(b)(6) stage, showing fully the nature of the controversy out of which the question arose.

In view of the certification, the court does not reach at this time the two additional grounds for dismissal, namely, that this action is barred by estoppel and laches and that King Coal's reading of section 17A-6A-12(2) offends both the federal and state constitutions.  Respecting the constitutional arguments, the certified question may be answered in a manner

14

that would obviate the need to reach the matter or that might answer the state constitutional challenge. See, e.g., Camreta v. Greene, 131 S. Ct. 2020, 2031 (2011) ("After all, a "longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); Hardy v. Richardson, 198 W. Va. 11, 13, 479 S.E.2d 310, 312 (1996) ("Because we also find that W.Va. Code § 23-4-22 is inapplicable to the facts in the record before us, we do not reach the constitutional issues as raised by the parties.").

Respecting the equitable assertions advanced by GM, the better course is to address the laches and estoppel challenges, if necessary, following receipt of an answer to the certified question as part of the equitable determination of whether to grant preliminary or permanent injunctive or declaratory relief.

Based upon the foregoing, it is ORDERED that GM's motion to dismiss be, and it hereby is, denied without prejudice pending an answer to the certified question.

## IV. Motion for a Preliminary Injunction

### A. Governing Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 23 (2008); Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011). In Winter, the Supreme Court stated that a party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. With respect to the "likely to succeed" factor, the decision in Winter also requires that a party seeking a preliminary injunction must "clear[ly] show[ ]" that it is likely to succeed on the merits. Winter, 555 U.S. at 22.

The court's decision to certify the central question in this case necessarily means that King Coal cannot, at this stage, make the clear showing on the merits required of it under Winter. It is, accordingly, ORDERED that the motion for a preliminary injunction be, and it hereby is, denied without prejudice.

16

**V.**

Based upon the foregoing discussion, it is ORDERED as follows:

1. That GM's motion to dismiss be, and it hereby is, denied without prejudice;

2. That King Coal's motion for a preliminary injunction be, and it hereby is, denied without prejudice;

3. That the question stated above be certified to the Supreme Court of Appeals for answer;

4. That the Clerk forward to the Supreme Court of Appeals under the official seal of this court, a copy of this memorandum opinion and order, which constitutes the Order of Certification, together with the original or copies of the record before this court to the extent requested by the Supreme Court of Appeals;

5. That the Clerk fulfill any request for all or part of the record simply upon notification from the Clerk of the Supreme Court of Appeals; and

6. That this action be, and it hereby is, stayed and retired to the inactive docket pending an answer to the certified question contained herein.

17

**The Clerk is directed to transmit a copy of this written opinion and order as aforesaid and to counsel of record.**

**ENTER: May 23, 2013**

**John T. Copenhaver, Jr.**
**United States District Judge**